**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**NATIONAL ARENA LEAGUE, INC.,**

   **Plaintiff,**

**v.**

**WTX INDOOR FOOTBALL, LLC,**

   **Defendant.**

**CIVIL ACTION FILE**

**No. 1:24-CV-01786-SCJ**

## ORDER

This matter appears before the Court on the Plaintiff's Motion for a Preliminary Injunction (Doc. No. [2])[1] for which the Court convened and re-convened hearings on April 26, 2024, and convened a hearing on May 6, 2024. Although Defendant was provided notice of the hearings (Doc. Nos. [8]; [11]), Defendant did not appear.[2]

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers referenced are those imprinted by the Court's docketing software.

[2] At the May 6, 2024 hearing, Plaintiff's counsel represented to the Court that he had notified Defendant of the May 6, 2024 rescheduled hearing date.

## I.   <u>BACKGROUND</u>

Plaintiff seeks to preliminarily enjoin Defendant, which owns the indoor football team the West Texas Desert Hawks (f/d/b/a West Texas Warbirds; the "Team"), from (1) joining the Arena Football League ("AFL"), (2) marketing, advertising, promoting, or selling any materials reflecting its membership or participation in the AFL, (3) allowing the ongoing public accessibility/visibility of any such materials already in the public domain, and (4) having the Team play for the AFL for the 2024 season.[3]

Plaintiff shows that on August 12, 2022, it entered into a Membership Agreement with Defendant (the "Agreement") for the Team (then known as the West Texas Warbirds) to operate in Odessa, Texas, and compete in Plaintiff's indoor football league. Doc. No. [2-2], ¶ 5, Ex. B. Per the Agreement, during its 3-year term, the Team would be the Plaintiff's exclusive franchisee within a 35-mile radius of Defendant's corporate office in Odessa. Id. ¶¶ 7–8, Ex. B, § A. The Agreement prohibits the Team and its owners[4] from participating in any

---

[3]  Per the schedule submitted by Plaintiff, the Team has already played the first two games of the season for the AFL. Doc. No. [2-2], 85. Thus, this Order applies only to the remaining scheduled games.

[4]  The Preamble of the Agreement identifies the Team's owners as "WTX Indoor Football, LLC." Doc. No. [2-2], 33.

2

other business, entity, or organization involved in men's professional or semi-professional arena or indoor football league in the United States 3 years after the termination of the Agreement. <u>Id.</u> ¶ 10, Ex. B, § 5(d). It grants Plaintiff the right to terminate the Agreement upon Defendant's violation of any term of the Agreement. <u>Id.</u> ¶ 9, Ex. B, § 5(a). In August 2023, after playing in Plaintiff's league for only one year of the 3-year term, Defendant left to join the AFL. <u>Id.</u> ¶ 11. Plaintiff contends that Defendant's move to the AFL is a material breach of the Agreement that has caused it irreparable harm.

## II.   <u>LEGAL STANDARD</u>

To obtain preliminary injunctive relief, the movant must clearly establish each of the following:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

<u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000). Here, Plaintiff has met this standard and, accordingly, its Motion for Preliminary Injunction is due to be granted.

3

## III.   <u>ANALYSIS</u>

First, Plaintiff is substantially likely to succeed on the merits. The Agreement prohibits Defendant from participating in any other men's professional or semi-professional arena or indoor football league in the United States for a 3-year period after the Agreement's termination. "For purposes of analyzing a covenant not to compete, Georgia considers franchise agreements to be analogous to employment contracts . . . ." <u>Smallbizpros, Inc. v. Court</u>, 414 F. Supp. 2d 1245, 1249 (M.D. Ga. 2006). Thus, to be enforceable, a non-compete provision in a franchise agreement must be "reasonable as to time, territory and scope." <u>Atlanta Bread Co. Int'l v. Lupton-Smith</u>, 285 Ga. 587, 590, 679 S.E.2d 722, 724 (2009). Whereas such provisions in franchise agreements, like those in employment contracts, were previously not blue-penciled, "[i]n 2010, the Georgia Constitution was amended to change Georgia's rules regarding 'blue penciling.' Under the new law, the courts may now modify a restrictive covenant that is otherwise void and unenforceable." <u>Fantastic Sams Salons Corp. v. Maxie Enterprises, Inc.</u>, No. 3:11-CV-22 CDL, 2012 WL 210889, at *2 (M.D. Ga. Jan. 24, 2012) (citing O.C.G.A. §§ 13–8–53(d); 13–8–54).

Having considered the time, territory, and scope of the non-compete provision at issue, the Court concludes that Plaintiff is substantially likely to succeed in establishing that the provision is enforceable. Because Plaintiff's league competes across the United States, the territorial restriction—prohibiting the Team and its owners from participating in the restricted activity across the entirety of that territory—appears reasonable. As to scope, because Plaintiff operates as a professional indoor football league, the scope of the restriction—prohibiting the Team and its owners from engaging with another business, entity, or organization involved in a men's professional or semi-professional arena or indoor football league—also appears reasonable. Lastly, while the time restriction (3 years) is beyond the "two-year duration often considered reasonable," H&R Block E. Enterprises, Inc. v. Morris, 606 F.3d 1285, 1292 (11th Cir. 2010)), blue-penciling is available to restrict the period to 2 years to render it presumptively reasonable. [5] Accordingly, Plaintiff has established that its substantial likelihood of success on the merits.

_____

[5] Plaintiff itself seems to acknowledge the reasonableness of a 2-year (rather than a more expansive 3-year) limitation. In its Complaint, Plaintiff seeks to enjoin Defendant's participation in the AFL for only the 2024 and 2025 seasons (i.e., for a 2-year term). Doc. No. [1], ¶ 32.

Second, Plaintiff has established irreparable harm in the absence of a preliminary injunction. AFL and Plaintiff are competing sports leagues. Doc. No. [7], ¶¶ 6, 9. According to Plaintiff's Co-Executive Director, Richard Bertz, the Team's move to the AFL irreparably harms Plaintiff's brand because (among other things) (1) it results in the perception that Plaintiff's league is "beneath" the AFL, and this perception will cause other teams to also seek to move from Plaintiff's league to the AFL and (2) Plaintiff will lose a portion of its fan base and its grip on the Texas market for arena football, which has a limited growth ceiling. Id. ¶¶ 8–11. The Court is persuaded that money damages cannot adequately compensate for this harm and, thus, an injunction is warranted. See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.).

Third, on balancing the harm to Plaintiff in the absence of a preliminary injunction with the harm Defendant will suffer under the injunction, the Court finds that the balance weighs in Plaintiff's favor. Plaintiff has shown that absent an injunction, its market presence and reputation will continue to erode. If enjoined, Defendant, who now appears to be affiliated with the AFL, will not be

6

able to participate in the AFL for the remainder of the 2024 season and will (presumably) lose revenue from ticket sales and suffer other monetary losses as well as intangible harms associated with an early-season withdrawal.[6] Although Defendant will be harmed by an injunction, ultimately, "any harm suffered by [Defendant] was brought about by [its] own actions in refusing to abide by [its] contractual obligations to [Plaintiff]. Thus, the hardship [Plaintiff] would suffer without a preliminary injunction outweighs Defendant['s] hardship resulting from a preliminary injunction." Winmark Corp. v. Brenoby Sports, Inc., 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014) (cleaned up).

Fourth, under the circumstances, a preliminary injunction would not be against public interests. "The public interest is served by upholding freely negotiated contracts." AWP, Inc. v. Henry, 522 F. Supp. 3d 1294, 1306 (N.D. Ga. 2020) Moreover, "enforcement of an ostensibly enforceable covenant not to compete would not be adverse to the public interest." Smallbizpros, Inc., 414 F. Supp. 2d at 1251. Thus, the public interest in the enforcement of contracts weighs

---

[6] To an extent, the Court's consideration of the harms Defendant is likely to suffer from an injunction is speculative because Defendant has failed to appear and oppose Plaintiff's Motion.

in favor of enjoining Defendant from continuing its participation in the AFL in violation of the non-compete provision of the Agreement.[7]

Finally, Federal Rule of Civil Procedure 65 requires the issuance by the movant of "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The district court may set the amount of security at its discretion. Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd., 112 F.3d 1125, 1127 (11th Cir. 1997). Here, the Court set the amount of security at $50,000 (Doc. No. [11], 2), and Plaintiff has tendered that amount to the Clerk of Court.

In sum, the Court concludes that Plaintiff has carried its burden of establishing its entitlement to a preliminary injunction.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED**.

Accordingly, upon actual notice of the Order by personal service or otherwise, (1) Defendant, (2) Defendant's officers, agents, servants, employees,

---

[7] Again, Defendant has failed to appear and offer any argument or evidence to indicate that enforcement of the non-compete is against public policy.

and attorneys, and (3) other persons who are in active concert or participation with any of the foregoing shall be **ENJOINED** from:

(1) Participating in the AFL;

(2) Participating in the remaining term of the AFL 2024 season;

(3) Conducting any marketing, advertising, promotion, or sales activities reflecting membership or participation in the AFL; and

(4) Maintaining (beyond 14 days from the actual notice of this Order) the public accessibility/visibility of any marketing, advertising, promotional, or sales materials reflecting membership or participation in the AFL that were already publicly accessible/visible before the actual notice of this Order.

**IT IS SO ORDERED** this _6th_ day of May, 2024.

_____

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

9